**EFRAIM NISSIM**
**354 DOREMUS AVE**
**NEWARK NJ 07105**



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Civil Action No. _____

| | |
|---|---|
| **EFRAIM NISSIM**<br>*Plaintiff*<br><br>vs.<br><br>**STEINBERG LAW FIRM LLC;**<br>*A NJ Limited Liability Company*<br>**JASON STEINBERG;**<br>*a New Jersey Lawyer*<br>**LARA R. WASHAH, ESQ.,**<br>*a New Jersey Lawyer*<br><br>*("STEINBERG DEFENDANTS)"*<br><br>*Defendants* | VERIFIED COMPLAINT FOR LEGAL MALPRACTICE;<br><br>NJRICO<br>N.J.S.A. § <u>2C:41-2(c)</u>;<br><br>&<br><br>FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)<br>18 U.S.C. § 1961 *et seq*<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## COMPLAINT

Plaintiff EFRAIM NISSIM, sues Defendants, STEINBERG LAW FIRM LLC is a limited liability company under the laws of the State of New Jersey having its principal place of business at 239 NEW ROAD STE B 312, PARSIPPANY NJ 07054 ; JASON STEINBERG, ESQ.; LARA R. WASHAH, ESQ. are New Jersey licensed lawyers, citizens of the State of New Jersey, and residents of the District of New Jersey.

Plaintiff demands a jury trial.

## JURISDICTION

EFRAIM NISSIM, is a State of California citizen, and a resident of the Central District of California.

**STEINBERG LAW FIRM LLC is a limited liability company under the laws of the State of New Jersey having its principal place of business at 239 NEW ROAD STE B 312, PARSIPPANY NJ 07054 ; JASON STEINBERG, ESQ.; LARA R. WASHAH, ESQ. are citizens of the State of New Jersey, and residents of the District of New Jersey.**

**Plaintiff, EFRAIM NISSIM, is a citizen of the State of California.**

**There is complete diversity of citizenship between plaintiff and all defendants, and the matter in controversy exceeds, exclusive of interests and costs, the sum of $75,000.There is complete diversity of citizenship between plaintiff and all defendants, and the matter in controversy exceeds, exclusive of interests and costs, the sum of $75,000.**

**This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1367(c); 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), because this case arises under the laws of the United States, based on claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1961 et seq.**

**Venue is proper in this district under 28 U.S.C. § 1391 and 18 U.S.C. § 1965, because the defendants principal place of business is within the District of New Jersey, and a substantial part of the events giving rise to plaintiffs claims occurred in this judicial district.**

### RELEVANT FACTS

Plaintiff EFRAIM NISSIM, sues Defendants STEINBERG LAW FIRM LLC; JASON STEINBERG, ESQ.; LARA R. WASHAH, ESQ., and alleges:

### JURISDICTION

1. EFRAIM NISSIM, is a State of California citizen, and a resident of the Central District of California.

2. STEINBERG LAW FIRM LLC; JASON STEINBERG, ESQ.; LARA R. WASHAH, ESQ., is and was at all times mentioned in this complaint a law firm and lawyers licensed in the State of New Jersey.

3. JASON STEINBERG, ESQ. & LARA R. WASHAH were at all times mentioned in this complaint members of the Bar of the State of New Jersey, and actively engaged in the practice of law in and around Parsippany, New Jersey. JASON STEINBERG and LARA R. WASHAH were at all relevant times partners of and did business as STEINBERG LAW FIRM LLC. *All are hereby referenced as the Steinberg                                                                                                            defendants.*

4. Plaintiff was arrested on April 4, 2023 and brought to New Jersey, to face criminal charges in Middlesex County and Union County, New Jersey. On or around May of 2023, EFRAIM NISSIM retained the STEINBERG LAW FIRM LLC; JASON STEINBERG & LARA R. WASHAH to represent him in a criminal matter. EFRAIM NISSIM paid thousands of dollars, of a $4,500 retainer to begin working for him. Numerous Middlesex County Court dates took place, and the Steinberg defendants did not show up to Court 5/11/23; 06/08/2023; 06/22/2023; 07/21/2023.

5. After a couple of months, EFRAIM NISSIM finally received partial discovery. EFRAIM NISSIM pointed out numerous legal flaws and defenses over the underlying criminal charges. Despite EFRAIM NISSIM identifying several lines of defense, they failed to properly investigate the matter or utilize the defenses. Yet the Steinberg defendants kept demanding more money.

6. In or about June or early July 2023, Plaintiff's telephone calls to Jason Steinberg, Esq.'s direct line stopped going through from the Essex County Jail. Plaintiff learned that Jason Steinberg had apparently requested for the jail's telephone service to block Plaintiff from calling him.

7. Jason Steinberg kept demanding more money and was doing nothing. In early May 2023, a bail hearing conducted in Union County; Plaintiff was ordered detained pretrial. Jason Steinberg failed to present any argument for bail, and despite Plaintiff telling Jason Steinberg of numerous clear factual inaccuracies in the State's arguments, Steinberg refused to rebut them.

8. In May 2023, Jason Steinberg came to visit Plaintiff at the Essex County Jail, and Plaintiff told Jason Steinberg that he wished to immediately appeal the Union County detention order to the Superior Court of New Jersey, appellate division. Jason Steinberg told Plaintiff the appeal would take 2 – 4 weeks. Jason Steinberg never informed Plaintiff as to the status.

9. Jason Steinberg never followed up after the instruction he gave to appeal, and Plaintiff kept inquiring as to the status of the case. Plaintiff was never informed that any adverse decision.

10. Towards the end of August 2023, Plaintiff informed Jason Steinberg that would be terminating the Steinberg defendants. In late August 2023 Jason Steinberg came to the jail. During the conversation, at the jail, Jason Steinberg asked Plaintiff for a second chance, and explained they did not actually file the appeal properly, so it was dismissed due to the mistakes, and had not remedied them. Jason Steinberg admitted what happened to Plaintiff, and said he would have Lara Washah file a corrected version. That did not occur until August 16, 2023. It was apparently rejected.

11. On or about September 14, 2023, Jason Steinberg came to see him at the jail with a nonlawyer, friend of Plaintiff's. Jason Steinberg was angry Plaintiff refused to give him more money. Jason Steinberg apparently filed a new appeal on September 14, 2023, which was rejected due to the failure to follow rules and procedures of the New Jersey Superior Court Appellate Division.

12. On or around September 16, 2023, Jason Steinberg and Lara Washah came to visit Plaintiff at the jail. At this point, Plaintiff terminated the Steinberg defendants.

13. Since terminating the Steinberg defendants, the Steinberg defendants claimed to have fired his personal assistant, who he claimed made error. The Steinberg defendants demanded more money, and despite Plaintiff's demands did not provide grand jury materials. Around the same time, Jason Steinberg claimed that Lara Washah. Jason Steinberg explained these facts on the record about one month later in the Union County Court.

14. Causing him to obtain new counsel, and since obtaining new counsel, Plaintiff has learned (with no help of the Steinberg defendants) that apparently the underlying charges are not legally valid, and contain serious constitutional violations, that will result in the dismissal of the case. For six entire months, the Steinberg defendants did nothing, except demand more money, while Plaintiff, languished in jail. As Plaintiff is factually & legally innocent, he was never served with a restraining order, was a California resident (upon whom a final restraining order may not be issued by a New Jersey Court), and various other speedy trial and due process-related constitutional violations that have taken place; Plaintiff has very viable, and cognizable defenses, that a reasonably competent lawyer would have identified, and utilized to secure his release. The same can be said for the severe errors, omissions, and neglect seen in the bail application process, that resulted in the remanding of

Plaintiff in custody.

15. As a result of the Steinberg defendant's actions and omissions, the Steinberg defendants breached their responsibility to adequately represent defendant and these breaches have caused and resulted in Plaintiff remaining in jail for nearly a year thus far. Had the Steinberg Defendants not made these errors and omissions, Plaintiff would have been released, and the case dismissed.

16. Plaintiff is an internet mogul who worked developing MySpace; the Real Estate MLS; and Microsoft Hotmail. Plaintiff has lost tens of millions of dollars in revenue, and business opportunites as a result of the Steinberg's defendants acts, omissions, negligence, and fraud. "[T]he general rule is that an attorney is responsible for the loss proximately caused the client by his negligence." *Id.* at 397, 521 A.2d 1343."[T]he measure of damages is ordinarily the amount that the client would have received but for his attorney's negligence." *Ibid.* (citing *Lieberman, supra,* 84 N.J. at 342, 419 A.2d 417).

17. All funds used to pay the Steinberg defendants came from the foreign country of Israel; Jason Steinberg and other Steinberg co-defendants used interstate & foreign emails, telephone calls, and bank wires between Israel and New Jersey to obtain funds. The Steinberg defendants used numerous facilities of interstate and foreign commerce, and federally insured/regulated financial institutions to commit their violations of the law.

## POINTS & AUTHORITIES

"A legal malpractice claim is 'grounded in the tort of negligence.'" *Nieves v. Off. of the Pub. Def.,* 241 N.J. 567, 579, 230 A.3d 227 (2020) (quoting *McGrogan v. Till,* 167 N.J. 414, 425, 771 A.2d 1187 (2001)). Accordingly, the elements of a legal malpractice claim are: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." *Id.* 241 N.J. at 582, 230 A.3d 227 (quoting *McGrogan,* 167 N.J. at 425, 771 A.2d 1187). It is the plaintiff's burden to establish these elements "by some competent proof." *Townsend v. Pierre,* 221 N.J. 36, 51, 110 A.3d 52 (2015) (quoting *Davis v. Brickman Landscaping, Ltd.,* 219 N.J. 395, 406, 98 A.3d 1173 (2014)).

"The issue of causation is ordinarily left to the factfinder." *Id.* 221 N.J. at 59, 110 A.3d 52. However, that general rule "is not absolute. As this Court has noted, the issue of proximate cause 'may be removed from the factfinder in the *highly extraordinary case* in which reasonable minds could not differ on whether that issue has been established.'" *Id.* 221 N.J. at 60, 110 A.3d 52 (emphasis added) (quoting *Fleuhr v. City of Cape May,* 159 N.J. 532, 543, 732 A.2d 1035 (1999)).

"Proximate cause consists of '"any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred."'" *Id.* 221 N.J. at 51, 110 A.3d 52 (quoting *Conklin,* 145 N.J. at 418, 678 A.2d 1060). Proximate cause "is that combination of 'logic, common sense, justice, policy and precedent' that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery." *Williamson v. Waldman,* 150 N.J. 232, 246, 696 A.2d 14 (1997) (quoting *People Express Airlines v. Consol. Rail Corp.,* 100 N.J. 246, 264, 495 A.2d 107 (1985)); *see also Conklin,* 145 N.J. at 417 n.5, 678 A.2d 1060 ("We have been candid in New Jersey to view this doctrine not so much as an expression of the mechanics of causation, but as an expression of line-drawing by courts and juries, an

instrument of 'overall fairness and sound public policy.'" (quoting *Brown v. U.S. Stove Co.*, 98 N.J. 155, 173, 484 A.2d 1234 (1984))).

"Foreseeability is a constituent part of proximate cause . . . ." *Komlodi v. Picciano*, 217 N.J. 387, 417, 89 A.3d 1234 (2014). Accordingly, "[i]f an injury is not a foreseeable consequence of a person's act, then a negligence suit cannot prevail." *Ibid.* Foreseeability is determined by an objective standard, namely, whether "a reasonably prudent, similarly situated person would anticipate a risk that [his or] her conduct would cause injury or harm to another person." *Id.* 217 N.J. at 417-18, 89 A.3d 1234. Thus, if "the injury or harm suffered was within the realm of reasonable contemplation, the injury or harm is foreseeable." *Id.* 217 N.J. at 418, 89 A.3d 1234.

"[W]hen there are concurrent causes potentially capable of producing the harm or injury," this Court applies the "substantial factor" test to evaluate proximate cause. *Id.* 217 N.J. at 422, 89 A.3d 1234. Under that test, "a tortfeasor will be held answerable if its 'negligent conduct was a substantial factor in bringing about the injuries,' even where there are 'other intervening causes which were foreseeable or were normal incidents of the risk created.'" *Id.* 217 N.J. at 423, 89 A.3d 1234 (quoting Brown, 98 N.J. at 171, 484 A.2d 1234). Put differently, "[t]he substantial factor test accounts for the fact that there can be any number of intervening causes between the initial wrongful act and the final injurious consequence and *does not require an unsevered connecting link between the negligent conduct and the ultimate harm.*" *Conklin*, 145 N.J. at 420, 678 A.2d 1060 (emphasis added).

The Court has recognized that the "substantial factor test" is well-suited "for legal malpractice cases in which inadequate or inaccurate legal advice is alleged to be a concurrent cause of harm." *Ibid.* A jury might consider, for instance, "whether a reasonably competent . . . lawyer would have advised the client[] of the . . . risks that [he or she] took and whether the lack of the benefit of that advice was a substantial factor in causing the[] harm." *Ibid.*

In *Conklin*, plaintiffs retained the defendant law firm to represent them in the sale of their farm. *Id.* 145 N.J. at 400, 678 A.2d 1060. The contract of sale prepared by the firm contained a subordination clause, and years later when the purchaser defaulted and filed for bankruptcy, that clause resulted in plaintiffs' losing the remaining money owed to them. *Id.* 145 N.J. at 401-02, 678 A.2d 1060. Plaintiffs sued the firm, alleging, among other things, that the firm had failed to adequately explain to plaintiffs the meaning and risks of subordination. *Id.* 145 N.J. at 402, 678 A.2d 1060. A jury found defendants were negligent "in explaining subordination and the risk associated with" it to plaintiffs. *Id.* 145 N.J. at 403-04, 678 A.2d 1060.

Of relevance to the present matter are the *Conklin* Court's observations about the plaintiffs' contributory negligence. The *Conklin* Court determined that the plaintiffs could not be declared negligent "for failing to understand [or inquire about] the meaning and risks of subordination where the jury has found that defendant negligently failed to provide an explanation that would have given them that understanding." *Id.* 145 N.J. at 407, 412, 678 A.2d 1060 (alteration in original) (quoting *Conklin v. Hannoch Weisman, P.C.*, 281 N.J. Super. 448, 458, 658 A.2d 322 (App. Div. 1995)). The Court explained:

[W]hen the duty of the professional encompasses the protection of the client or patient from self-inflicted harm, the infliction of that harm is not to be regarded as contributory negligence on the part of the client. See *Cowan v. Doering*, 111 N.J. 451, 468, 545 A.2d 159 (1988) ("Because [defendants'] duty of care included the prevention of the kind of self-damaging acts that caused plaintiff's injuries, the plaintiff's actions and capacity were subsumed within the

defendants' scope of duty. Thus, . . . the defense of contributory negligence was not available."). The reason is that the [plaintiff's] conduct relates to causation rather than duty.

[*Id.* 145 N.J. at 412, 678 A.2d 1060 (second alteration and omission in original).]Thus, the Court observed that when there is a foreseeable risk that clients might engage in "self-damaging" conduct due to their inferior knowledge of the matter within the attorney's scope of expertise, it is the attorney's duty to prevent that conduct by providing clients with the relevant information. *Ibid.*

Two reported federal district court decisions also have distinguished *Gautam* so as to permit the assertion of emotional distress damages in a legal malpractice claim when the client's interest was non-pecuniary in nature. First, in *Lawson v. Nugent*, 702 F. Supp. 91, 92 (D.N.J.1988), the plaintiff brought a legal malpractice claim against his attorney whose alleged malpractice resulted in an additional twenty months of confinement upon conviction. The plaintiff sought damages for the "emotional anguish he sustained" as a result. *Ibid.* The court distinguished the case from *Gautam*, noting "[t]he relationship between plaintiff-client and defendant-attorney was not necessarily predicated upon economic interest." *Id.* at 93. The court observed that because this was a "diversity case," it "must decide the issues in accordance with the law of New Jersey." *Id.* at 94. Further noting that "[d]amages for emotional distress have been allowed by New Jersey courts in an increasing number and variety of contexts," *ibid.*, the court concluded that the "plaintiff should be allowed to prove damages for emotional distress attributable to the extra twenty months of confinement in a maximum security penitentiary." *Id.* at 95.

In *Snyder v. Baumecker*, 708 F. Supp. 1451, 1453 (D.N.J.1989), the plaintiff brought suit on behalf of herself and the estate of her son, who committed suicide while in custody for motor vehicle offenses. One of the defendants was her son's court-appointed attorney, who allegedly committed malpractice. *Id.* at 1453, 1462. Citing its prior decision in *Lawson, supra*, the court again distinguished *Gautam*, noting that the attorney-client relationship there was "predicated on an economic interest, while . . . in the case at bar, the attorney was retained to provide a defense to a criminal prosecution, thus making emotional distress, in the latter situation, a reasonably foreseeable consequence of an attorney's malpractice." *Id.* at 1464.

*Kohn*'s holding that emotional distress damages are recoverable in a legal malpractice case where non-economic interests are at stake has been described as the "minority rule." *Leonard v. Walthall*, 143 F.3d 466, 468 (8th Cir.1998). In *Leonard*, the plaintiffs alleged negligence in the defendant's representation of their interests in an adoption. *Id.* at 467. The Eighth {87 A.3d 794} Circuit was asked to predict "whether, under Arkansas law, plaintiffs may recover damages for their alleged emotional distress resulting from defendant's negligent conduct, notwithstanding the undisputed fact that plaintiffs have suffered no physical injury or harm to a personal or economic interest." *Id.* at 468. Relying upon the decision in *Thornton v. Squyres*, 317 Ark. 374, 877 S.W.2d 921 (1994), which involved the plaintiff's "claim of outrage . . . based upon allegations that her attorney mishandled her divorce and thus caused her temporarily to lose custody of her child," the *Leonard* court affirmed dismissal of the plaintiffs' complaint. *Ibid.*; *see also Taylor v. Paskoff & Tamber, LLP*, 908 N.Y.S.2d 861, 863, 29 Misc. 3d 1125 (Sup.Ct.2010) (rejecting claims for emotional distress damages in a legal malpractice action involving representation in adoption or custody matters).

However, nearly a quarter of a century ago, one commentator recognized "an emerging trend . . . that allows a client to recover for emotional distress." Kelleher, Joseph J., "An Attorney's

Liability for the Negligent Infliction of Emotional Distress," 58 Fordham L. Rev. 1309, 1319 (1990). This "developing trend emphasizes the client's injured interest in determining the extent of the attorney's liability for emotional distress damages." *Id.* at 1320. "Where the attorney is protecting a pecuniary interest, emotional distress damages are severely limited[,] [but] [w]here the interest is personal, . . . courts adopting this view are more willing to compensate emotional harm." *Id.* at 1320-21.

Generally speaking, when an attorney breaches a duty of care owed to a client, the attorney is liable for damages proximately caused by the breach. *Gilbert v. Stewart*, 247 N.J. 421, 442-43, 255 A.3d 1101 (2021).

THE STEINBERG DEFENDANTS purposefully; carelessly; recklessly; and negligently sought to undermine Plaintiff's position; refused to provide competent legal services; and subjected EFRAIM NISSIM to adverse treatment. This misconduct constituted violations of the New Jersey Rules of Professional Conduct, and corroborate Plaintiff's allegations.

Specifically, the following RPCs were violated by the Steinberg defendants:

RPC 1.1(a) (gross neglect); RPC 1.3 (lack of diligence); RPC 1.1(b) (pattern of neglect); RPC 1.4(b)(failure to communicate with a client), RPC 1.5(a)(fee overreaching); RPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation) and RPC 8.4(d) (conduct that is prejudicial to the administration of justice); RPC 1.4(c) (failure to explain a matter to the extent reasonably necessary to permit the client to make informed decisions); RPC 1.5(b) (failure to set forth in writing the basis or rate of the fee); RPC 1.16(d) (upon termination of representation, failure to take steps to the extent reasonably practicable to protect a client's interests, including by refunding any unearned legal fee); RPC 4.1(a)(1) (false statement of material fact or law to a third person); RPC 1.15(b) (duty to promptly notify the client or third person after receiving property in which a client or third person has an interest).

Generally, "[i]n accepting a case, the lawyer agrees to pursue the goals of the client to the extent the law permits, even when the lawyer believes that the client's desires are unwise or ill-considered." *Ziegelheim v. Apollo*, 128 N.J. 250, 261, 607 A.2d 1298 (1992);

N.J.S.A. 2C:41-2(c). It is important to note that NJRICO is broader in scope than the federal RICO statute. *State v. Ball*, 268 N.J. Super. 72, 104, 632 A.2d 1222 (App. Div. 1993) aff'd, 141 N.J. 142, 661 A.2d 251 (1995). The New Jersey courts take a liberal stance in permitting plaintiffs to plead NJRICO violations, rejecting the narrow construction of the federal statute that many circuits, including this one, have adopted. *Id.* at 103-104.

Although the N.J. RICO statute and its federal analog are similar, New Jersey's RICO statute is broader. *Ford Motor Co. v. Edgewood Props., Inc.*, Civ. Nos. 06-1278, 06-4266, 2009 U.S. Dist. LEXIS 4172, 2009 WL 150951, at *10 (D.N.J. Jan. 20, 2009). New Jersey courts "take a liberal stance in permitting plaintiffs to plead [N.J. RICO] violations, rejecting the narrow construction of the federal statute that many circuits, including this one, have adopted." *Id.*

<u>Plaintiff has clearly pled</u> the existence of an enterprise. N.J.S.A. 2C:41-1(c) defines "enterprise" to include "any individual, . . . association, or other legal entity."

But did these demands and threats constitute "a pattern of racketeering activity?" As pleaded: yes. N.J.S.A. 2C:41-1(a)(1)(h) defines "racketeering activity" to include extortion and 2C:41-1(a)(2) incorporates certain crimes enumerated in the United States Code, including the Hobbs Act, <u>18 U.S.C. 1951</u>, into the definition of "racketeering activity." In part, the Hobbs Act makes it a crime to affect commerce in any way by extortion. <u>18 U.S.C. 1951</u>(a). Section 1951(b)(2) defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . ." Cases interpreting the Hobbs Act "have repeatedly stressed that the element of 'fear' required by the Act can be satisfied by putting the victim in fear of economic loss." *United States v. Capo*, <u>817 F.2d 947</u>, 951 (2d Cir. 1987) (quoting *United States v. Brecht*, <u>540 F.2d 45</u>, 52 (2d Cir. 1976) (overruled on other grounds by *Perrin v. United States*, <u>444 U.S. 37</u>, 100 S. Ct. 311, <u>62 L. Ed. 2d 199</u> (1979))). We should consider that fear from the victim's perspective, and we must find proof that the victim reasonably believed (1) "that the defendant has the power to harm" him, and (2) "that the defendant would exploit that power to the victim's detriment." *Id.* Further, Section 2C:41-1(d) defines a pattern of racketeering to require (1) at least two incidents of racketeering which occurred within ten years of each other, and (2) "a showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants, or victims or methods of commission . . . and are not isolated incidents." N.J.S.A. 2C:41-1(d)(1)-(2).

Platintiff alleges (1) the parties formed a valid contract; (2) The Steinberg defendants failed to perform under the contract's terms; and Plaintiff suffered damages as a result. *Murphy v. Implicito*, 392 N.J. Super. 245, 920 A.2d 678, 689 (N.J. Super. App. Div. 2007). To show there was a valid contract, Plaintiffs must show the basic precepts of contract formation: offer, acceptance, and consideration. *Goldfarb v. Solimine*, 245 N.J. 326, 245 A.3d 570, 577 (N.J. 2021). That agreement's terms must also "be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Id.* (quoting *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 608 A.2d 280, 284 (N.J. 1992)). Plaintiff has pleaded an adequate breach of contract claim.

Plaintiff has pled a plausible claim for breach of the implied covenant of good faith and fair dealing. Every contract formed in New Jersey contains an implied covenant of good faith and fair dealing. *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 690 A.2d 575, 587 (N.J. 1997). In other words, "[i]n every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" *Id.* (quoting *Palisades Props., Inc. v. Brunetti*, 44 N.J. 117, 207 A.2d 522, 531 (N.J. 1965)). Further, a party may breach that covenant even if they have not breached any express terms of an agreement. *See id.*

*See United Roasters, Inc. v. Colgate-Palmolive Co.*, <u>649 F.2d 985</u> (4th Cir. 1981) (finding breach of covenant of good faith where party ceased performance while agreement was still in effect because they held an obligation to continue good faith performance up until its right to terminate the agreement became effective).

To state a claim for unjust enrichment, a plaintiff must show that: (1) the defendant received a benefit and (2) retention of that benefit without payment would be unjust. *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519, 526 (N.J. 1994). It is unjust to retain the benefit without payment if, had "the true facts [been] known to the plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 219 A.2d 332, 334-35 (N.J. Super. Ct. App. Div. 1966). Unjust enrichment is a quasi-contract principle of law. *See id.* at 334. It is a form of recovery the law allows when there is no contract or the contract was invalid, but principles of justice, reason, and fairness dictate that a court should find a contract "implied by law." *Id.* "Courts employ the fiction of Quasi or constructive contract with caution." *Id.*

## COUNTS ALLEGED

### PLAINTIFF INCORPORATES ALL THE FOREGOING INTO EVERY COUNT AS THE FACTUAL BASIS FOR THE COUNT

### COUNT ONE:

THE STEINBERG DEFENDANTS breached a general duty of care to plaintiff (count one);

*See N.J.S.A.* 2A:13-4 (stating an attorney "shall be liable for all damages sustained by [a] client" resulting from the attorney's "neglect or mismanage[ment] [of] any cause in which [the attorney] is employed").

While "a cause of action for malpractice cannot be based exclusively on the asserted breach of" an *RPC*, "it is clear that the [*RPCs*] may be relied on as prescribing the requisite standard of care and the scope of the attorney's duty to the client." *Gilles v. Wiley, Malehorn & Sirota*, 345 N.J. Super. 119, 125, 783 A.2d 756 (App.Div.2001) (citing *Baxt v. Liloia*, 155 N.J. 190, 201, 714 A.2d 271 (1998)); *Davin, supra*, 329 N.J. Super. at 74 n.3, 746 A.2d 1034). Therefore, a breach of an *RPC* "is evidential of [a] defendant's failure to comply with the required standard of care." *Id.* 125-26, 783 A.2d 756 (citation omitted); *see also Johnson v. Schragger, Lavine, Nagy & Krasny*, 340 N.J. Super. 84, 90, 773 A.2d 1164 (App.Div.2001) (noting that "the Rules of Professional Conduct may provide guidance to the court in determining whether a duty exists").

### COUNT TWO:

THE STEINBERG DEFENDANTS breached a duty owed to plaintiff by committing legal malpractice (count two);

### COUNT THREE:

**THE STEINBERG DEFENDANTS was professionally negligent and as a result breached his relationship with the plaintiff (count three);**

### COUNT FOUR:

**THE STEINBERG DEFENDANTS committed intentional and negligent misrepresentation (count four);**

### COUNT FIVE:

**THE STEINBERG DEFENDANTS breached both implied and express warranties and the implied covenant of good faith and fair dealing (count five);**

### COUNT SIX:

Violations of the Racketeer and Influenced Corruption Act ("RICO) 18 U.S.C. § 1961 (count six);

### COUNT SEVEN:

Mail fraud, in violation of 18 U.S.C. § 1343 (count seven);

### COUNT EIGHT:

Wire fraud, in violation of 18 U.S.C. § 1341 (count eight);

### COUNT NINE:

Honest services fraud, in violation of 18 U.S.C. § 1346 (count nine);

### COUNT TEN:

Defamation, in violation of 28 U.S.C. § 4101 (count ten);

### COUNT ELEVEN:

Bribery, in violation of 18 U.S.C. § 201 (count eleven);

### COUNT TWELVE:

Commercial disparagement against Plaintiff (count twelve);

### COUNT THIRTEEN:

Intentional interference with prospective economic advantage against Plaintiff (count thirteen);

### COUNT FOURTEEN:

Aid in the commission of a tort against Plaintiff (count fourteen);

### COUNT FIFTEEN:

Common Law Fraud (count fifteen);

### COUNT SIXTEEN:

Unjust enrichment (count sixteen);

### COUNT SEVENTEEN:

Intentional infliction of emotional distress (count seventeen);

The Restatement recognizes that a lawyer liable for legal malpractice may be subject to economic damages and damages for emotional distress. *Restatement (Third) of the Law Governing Lawyers* 53 (Am. Law Inst. 2000).

### COUNT EIGHTEEN:

Gross Negligence (count eighteen);

### COUNT NINETEEN:

Civil racketeering in violation of the New Jersey Civil Racketeer Influenced and Corrupt Organizations Act (NJRICO), *N.J.S.A.* §§ 2C:41-1 to -6 (count nineteen);

### COUNT TWENTY:

Substantive due process, freedom of speech (access to courts), equal protection, procedural due process & right to counsel violations under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 and -2 (count twenty);

### COUNT TWENTY-ONE:

Negligent misrepresentation (count twenty-one);

### COUNT TWENTY-TWO:

Fraudulent misrepresentation (count twenty-two);

### COUNT TWENTY-THREE:

Breach of the Covenant of Good Faith and Fair Dealing (count twenty-three)

### *PRAYER*

EFRAIM NISSIM demands judgment against THE STEINBERG DEFENDANTS jointly and severally, for:

A. Damages in excess of $100,000,000,

B. Pre- and postjudgment interest on those damages as allowed by law; and

C. Jury Trial

D. All other relief that the Court may deem just and proper.

### *VERIFICATION*

I, EFRAIM NISSIM, verify under penalty of perjury, that all information provided is true and correct to the best of my knowledge.

Dated: December 4, 2023

*Respectfully submitted,*
*EFRAIM NISSIM*
EFRAIM NISSIM      Dated: December 4, 2023